Smith *v.* Sanger.

[577]                    SMITH *vs.* SANGER.

In an action of trespass for cutting timber upon a lot of land containing 250 acres, the plaintiff claimed title under a deed from the comptroller, given upon a sale for the non-payment of taxes. It appeared that at the date of the deed, there was a brush fence between the lot and another lot adjoining which was occupied under a contract from the plaintiff. In consequence of a crook in the fence, about two and a half rods of the lot in question was enclosed with the lot adjoining so occupied, and the occupant and those who had preceded him in the possession of that lot, had mowed grass upon the two and a half rods, but without intention to occupy over the line of the lot, or knowledge that they had done so. *Held,* that the judge erred on the trial in holding that the lot in question was actually occupied within the meaning of the statute, (1 *R. S.* 412, § 83,) so as to require notice to the occupant before the title could become absolute under the comptroller's deed.

To constitute an occupancy which will render notice necessary under the statute, there must be, it seems, an *intention* on the part of the alledged occupant, to enjoy the property. An accidental, or chance occupation of a small part of the land, does not require notice.

GERRIT SMITH brought trespass *quare clausum fregit,* against John Sanger for cutting wood on lot No. 84, in Duer's patent, situated in the county of Clinton. The plaintiff claimed title under a sale for unpaid taxes and a deed from the comptroller of the state, given in pursuance of such sale, bearing date August 1, 1845. The defendant insisted that the lot was occupied at the date of the deed, within the meaning of the statute, (1 *R. S.* 412, § 83,) and inasmuch as no notice to redeem had been given, that the plaintiff's title was good for nothing. The question on the trial at the circuit was, whether the lot was in fact so occupied. The judge ruled that there was an occupancy within the statute, and he refused to submit the question to the jury. The plaintiff was accordingly nonsuited. The supreme court, in the fourth district, affirmed the decision and the plaintiff appealed to this court. The facts relating to the alledged occupancy are stated in the opinion of BRONSON, Ch. J.

*Geo. F. Comstock,* for appellant, cited and commented upon 7 *Wend.* 148 : 15 *id.* 348 ; 16 *id.* 550 ; 5 *Hill,* 289.

*W. A. Dart*, for respondent.                                        [578]

BRONSON, Ch. J.   The lot in question contains two hundred
and fifty acres of land, and the question is whether the land was
"in the actual occupancy of any person" on the first day of
August, 1845, the date of the comptroller's deed to the plaintiff.
(1 *R. S.* 412, § 83.)   Lot number 84 in Duer's patent is bounded
on the west by lot number 57, and those two lots are bounded
in part on the south by lot number 4 of the gore.   There was a
brush fence on and near the south line of lots 84 and 57, but the
fence was crooked, and near the southwest corner of 84 includ-
ed a small strip or nook of land, containing about two and a
half square rods in a meadow upon lot 4.   When, or by whom
the fence was made, did not appear.   On the second day of
July, 1845, nearly a month before the date of the comptroller's
deed, one Baker took possession of lot 4 of the gore under a con-
tract to purchase the same from the plaintiff; and Baker that
season mowed the meadow on lot 4, including the nook, which
on a subsequent survey, was found to be a part of lot 84.   Baker
did not know at the time that the fence to which he mowed in-
closed any part of lot 84.   Vaughan, who prior to July, 1845,
held a contract for the purchase of lot 4 of the gore, never claimed
to occupy or be in possession of any part of lot 84; nor was there
any proof that those who had occupied number 4 ever claimed any
part of lot 84, or that they knew or supposed that any part of
that lot was included by the brush fence in the gore lot meadow,
until Baker discovered the fact some time after he took possession.
The fact seems to be, that the one who made the brush fence in-
tended it should be on the line between the lots.   But as the
land was worth only three dollars per acre, and the fence was
of a cheap and temporary nature, no great pains were taken to
make it straight; and the strip in question, amounting to only
one sixteen thousandth part of the lot, and not of the value of
five cents, was included in lot 4 by mistake.   I have no doubt
that the jury would have so found the fact, if the question had
been left to their decision.   But the judge refused to submit the
question of occupancy to the jury, and non-suited the [579]

plaintiff. In all of the cases where it has been held that notice was necessary, there was a substantial occupancy of some part of the lot or parcel of land which had been sold by the comptroller, with an intention to enjoy the property, either by right or by wrong; while here the enjoyment seems to have been merely accidental, and without an intention to occupy any part of lot 84. I think there was no occupancy of the lot within the meaning of the statute. But if that was matter of doubt upon the evidence, the question should have gone to the jury. The judgment should therefore, be reversed, and a new trial granted.

Ordered accordingly.