FRANCIS B. WALLACE, Appellant, *v.* DAVID SWINTON, Respondent.

A plaintiff in ejectment must recover upon the strength of his own title; he can take nothing by reason of any defects in that of the defendant.

An execution against real property, issued after the death of the judgment debtor, is absolutely void as against those having in their hands any portion of the real estate of the deceased affected by the judgment, who have not been made parties to proceedings authorized by the law to revive the judgment against said estate.

It is essential to the validity of such an execution that its issuing be authorized by judgment in proceedings, under section 376 of the Code, for the enforcement of the judgment.

It is not optional with the judgment creditor to proceed under that section or under section 284; the latter is only applicable where there has been a delay for five years in issuing execution, and the judgment debtor is still living.

Said section 376 is not repealed or affected by the act of 1850 (chap. 295, Laws of 1850), making the leave of the surrogate necessary to the issuing of an execution after death of the judgment debtor; this is simply an additional requirement.

*Flannigan* v. *Irwin* (53 Barb., 587), *Wilgus* v. *Bloodgood* (33 How., 289) overruled as far as this question is concerned.

As to whether heirs, devisees or terre-tenants can avail themselves of irregularities in proceedings before the surrogate to defeat a title to real property acquired under a sale by virtue of an execution authorized to be issued by the surrogate, *quære.*

(Argued February 1, 1876; decided February 15, 1876.)

APPEAL from order of the General Term of the Supreme Court, in the second judicial department, affirming an order of Special Term, which set aside a verdict for plaintiff and granted a new trial.

This was an action of ejectment, brought to recover possession of certain premises situate in the town of Deer Park, Orange county. The plaintiff claimed title by virtue of a sale under two executions, issued upon judgments against one Samuel Fowler. After the rendering of the judgments, and before the executions were issued, Fowler

died, in 1864, seized of the lands in question. After his death, his heirs took possession, and remained in possession until the entry of defendant. In 1868, the plaintiff, then being the owner of the judgments, presented a petition to the surrogate of Orange county asking leave to issue executions thereon; such proceedings were thereupon had that in June, 1868, the surrogate granted leave. No execution had been previously issued upon said judgments, and more than five years had elapsed since the rendering of the judgments. Plaintiff, also, in June, 1868, presented a petition to the Supreme Court for leave to issue executions, setting forth, among other things, that the judgment debtor died seized of real estate, subject to the liens of the judgments. An order to show cause was granted, which directed service thereof to be made on the widow and heirs at law of the deceased, who were named, the deceased having died intestate.

The order was served on the persons named, and upon various others, occupants of portions of the premises. On return of the said order, an order was made by the Special Term, by default, granting the leave sought. A motion was subsequently, and after executions had been issued, made on behalf of the widow to open the default and set aside the order, upon which it was referred to a referee to take testimony and find the facts, the same not to interfere with proceedings upon the executions. The referee reported the two judgments to be wholly unpaid. The case does not show any further proceedings thereon. No guardian *ad litem* for the infant heirs was appointed in the proceedings, either in the Surrogate's Court or in the Supreme Court. The premises in question were sold under the execution, and bid off by plaintiff who, after expiration of the time for redemption, received the sheriff's deed therefor. Defendant was then in possession. He entered into possession under a contract with one Birdsall, who agreed to procure from the sheriff a certificate of sale of the premises and to assign it to defendant. Further facts appear in the opinion.

*Stephen W. Fullerton* for the appellant. Defendant can not raise any question as to the regularity of these proceed ings. (*People* v. *Norton*, 9 N. Y., 176; *In re Livingston*, 34 id., 555–570; *Casler* v. *Shipman*, 35 id., 533; *Campbell* v. *Erie R. Co.*, 46 Barb., 319; *Van Etten* v. *Currier*, 3 Keyes, 329; *City Bk. of N. H.* v. *Perkins*, 29 N. Y., 554; *Brown* v. *Perkins*, 36 id., 473.) If it was irregular to proceed without the appointment of a guardian for the infant heirs at law, the proceedings are thereby rendered voidable merely, not void. (*Croghan* v. *Livingston*, 17 N. Y., 218; *Rogers* v. *McLean*, 34 id., 536; Bacon's Abr., Infancy and Age, 1, 2–6; *Whittingham's Case*, 8 Coke, 43; *Austin* v. *Charlestown Fem. Sem.*, 8 Metc., 196; *Van Bramer* v. *Cooper*, 2 J. R., 278; *Clemens* v. *Clemens*, 37 N. Y., 59; *Boylen* v. *McAvoy*, 29 How., 278; *Jackson* v. *Todd*, 6 J. R., 257; *Bool* v. *Mix*, 17 Wend., 119.) Plaintiff having acquired the rights of the infants, is entitled to judgment of ejectment against defendant. (*Jackson* v. *Hazen*, 2 J. R., 22; *Jackson* v. *Harder*, 4 id., 202; *Smith* v. *Lorillard*, 10 id., 338.) The surrogate and the Supreme Court having jurisdiction of the proceedings and to make the order that the executions issue, those orders cannot be attacked or impeached in this action. (C. & H. Notes, 946, note 692; *Jackson ex dem. Jenkins* v. *Robinson*, 4 Wend., 437; *Van Wormer* v. *Mayor, etc.*, 15 id., 263; *Wilder* v. *Case*, 16 id., 583; *Monell* v. *Dennison*, 17 How., 422; *White* v. *Merritt*, 3 Seld., 352; *Porter* v. *Purdy*, 29 N. Y., 106; 1 Clinton's Dig. [ed. 1866], 1112.) The appointment of a guardian *ad litem* for the infant defendants was not necessary. (Code, § 115; *Fairchild* v. *Durand*, 8 Abb., 305; *Croghan* v. *Livingston*, 17 N. Y., 218; *Rogers* v. *McLean*, 34 id., 536; *Lefever* v. *Laraway*, 22 Barb., 175; 2 Story's Eq. Jur., §§ 1334–1347.) The order of the surrogate was regular and authorized the issuing of the executions. (Laws of 1850, chap. 295; *Alden* v. *Clark*, 11 How., 209; *Wilgus* v. *Bloodgood*, 33 id., 289; *Flanagan* v. *Tinin*, 37 id., 130; *In re Hopper Mott*, 1 Tuck., 344; 3 R. S. [5th ed.], 158; 3

Statement of case.

·id., 154, 362·; *Van Dusen* v. *Sweet*, 51 N. Y., 385.) Permission of the Supreme Court was properly and regularly obtained before the executions were issued. (Code, §§ 283, 284; 1 Tuck., 344; 11 How., 209–214.)

*C. H. Winfield* for the respondent. In ejectment the plaintiff must recover, if at all, on the strength of his own title, not on the weakness of that of the defendant. (*Hill* v. *Draper*, 10 Barb., 454; *Richardson* v. *Pulver*, 63 id., 67; *Smith* v. *Lorillard*, 10 J. R., 339, 346; *Lane* v. *Raymond*, 2 S. & R., 64; *Covert* v. *Traver*, 3 id., 283; *Lessee of Walter* v. *Coulter*, Add., 390; Tyler on Ejectment, 72, 105, 204, 560, 852; *Brady* v. *Henion*, 8 Bosw., 528; *Foster* v. *Evans*, 51 Mo., 39; *Sullivan* v. *Dimmitt*, 34 Tex., 114; *Hutchinson* v. *Perley*, 4 Cal., 33; *Bloom* v. *Burchick*, 1 Hill, 130; *Schauber* v. *Jackson*, 2 Wend., 13; *Harrison* v. *McIntosh*, 1 J. R., 379; *Hunter* v. *Trustees, etc.*, 6 Hill, 407; *Fulton* v. *Hanlow*, 20 Cal., 450; *Love* v. *Hill*, 3 Harr. [Del.], 530; *Shumway* v. *Phillips*, 22 Penn., 135; *Townsend* v. *Wesson*, 4 Duer, 342; *Jackson ex dem. Sleight* v. *Hasbrouck*, 12 J. R., 213; *Jackson ex dem. Antell* v. *Brown*, 3 id., 459.) Leave to issue the executions was not properly obtained. (2 Stat. at Large, 75, § 23, subd. 3; *Sheldon* v. *Wright*, 6 N. Y., 497, 511; *Dakin* v. *Hudson*, 6 Cow., 221; *People* v. *Koeber*, 7 Hill, 39; 1 id., 39: *Mahoney* v. *Gunter*, 10 Abb., 431; *Corwin* v. *Merritt*, 3 Barb., 341; *Burnstead* v. *Read*, 31 id., 661; *People* v. *Koeber*, 7 Hill, 39; *Miller* v. *Brinkerhoff*, 4 Den., 118; *Marine Bk. of Chicago* v. *Van Brunt*, 49 N. Y., 160; *In re Bentley*, 16 Abb., 89; 2 Stat. at L., 104, 634; Dayton on Surr., 586; *Ackley* v. *Dygert*, 33 Barb., 176; *Lefever* v. *Laraway*, 22 id., 167.) Plaintiff should have proceeded by action to revive the judgments against the heirs of Fowler. (*Campbell* v. *Rawdon*, 18 N. Y., 421, 422; *Jackson* v. *Schaffer*, 11 J. R., 513; *Morton* v. *Croghan*, 20 id., 106; *Ireland* v. *Litchfield*, 22 How., 178, 180; Code, § 284; 4 Stat. at Large, 634; *Frink* v. *Morrison*, 13 Abb., 80, 83; *Cameron* v. *Young*, 6 How., 372.)

ALLEN, J. The plaintiff must recover upon the strength of his own title, and can take nothing by reason of any defects in that of the defendant. It may be assumed for all the purposes of this appeal that the questions sought to be made in respect to the regularity and validity of the proceedings before the surrogate, and of his order granting leave to issue execution are not open to the defendant, but can only be raised and taken by the personal representatives of the judgment debtor over whom the surrogate had jurisdiction. The question in the *Marine Bank of Chicago* v. *Van Brunt* (49 N. Y., 160) arose upon a motion made by the administratrix of the deceased debtor to set aside an execution for irregularity. The moving party as the personal representative of the deceased judgment debtor properly made the application. The question as to the regularity of the proceedings before the surrogate, as well as the necessity of an application to the Supreme Court for leave to issue the execution were involved in that appeal and considered by the court. It does not follow, however, from the judgment in that case that heirs or terre-tenants could avail themselves of the irregularities there complained of to defeat a title to real property acquired under a sale by virtue of the execution, and we do not consider it necessary to pass upon the question at this time. The important question and that which goes to the foundation of the plaintiff's right of recovery is, whether the execution under which he acquired title was void for the reason that it was issued several years after the death of the judgment debtor without proceedings against the heirs, devisees or terre-tenants of the property affected by the judgment, and without giving them a day in court to show cause why the judgment should not be enforced against the estate of the judgment debtor in their hands.

If the execution was merely irregular and therefore only voidable, proceedings under it are valid, and the title of the plaintiff cannot be impeached collaterally, or so long as the proceedings remain unreversed and unvacated. The remedy of the party affected by the irregularity would be by direct

application to set aside the execution. (*Jackson* v. *Robins*, 16 J. R., 537.) But an execution against real property issued after the death of the judgment debtor is absolutely void as against those who are not made parties to proceedings authorized by law for the revival of the judgment against their property, and making them parties to the judgment.

Before the Code of Procedure the process was by writ of *scire facias quare executionem non*, and an execution issued against lands and tenements without a revivor by such process was void as to all who were not made parties to the proceedings. ( *Woodcock* v. *Bennet*, 1 Cow., 711 ; *Stymets* v. *Brooks*, 10 Wend., 207 ; *Campbell* v. *Rawdon*, 18 N. Y., 412 ; Dyer, 76, *b;* Bacon's Abr., Ex., G. 2 ; Com. Dig., Ex. F.) In *Jackson* v. *Robins* (*supra*), the claimant had been personally summoned upon the *scire facias* as heir, while she claimed as devisee, and the court held that sufficient to give jurisdiction. The reasons given for the necessity of a *scire facias* are that a new party is affected by the execution, and that these new parties should have a day in court to show cause, if any, against the application of their property to the discharge of the judgment.

The Code in simplifying the procedure in civil actions merely changed the form of the remedy. It abolished the writ of *scire facias* and gave two distinct and different remedies as substitutes ; the one applicable in cases where there has been a delay in the issuing of execution for five years and the judgment debtor is still living, and the other, cases where the judgment debtor has died after judgment ; and the proceedings in the one case are not applicable to and cannot be adopted in the other. It is not optional with the judgment creditor whether he proceed under section 284 or section 376 of the Code. If the debtor is alive he must proceed under the former ; if dead, under the latter. If an execution issues against a living judgment debtor after the statutory limitation as to time, and without previous application to the court, it is simply irregular and voidable, but not absolutely void : there is a party living who can take measures to avoid the

proceeding. Not so, however, where the judgment debtor is dead and the execution issues against real property in the hands of strangers to the judgment, there is in such case no party living to take advantage of the irregularity. By section 284 application is made for leave to issue execution upon notice to the adverse party, *i. e.*, the judgment debtor, over whom the court has jurisdiction in the action. In the case of a deceased judgment debtor there is no adverse party to whom notice may be given; therefore provision is made by section 376 for making the new parties in interest parties to the record and proceedings, by a process proper in form to give the court jurisdiction over them. The statute prescribing the procedure for the issuing of an execution against real property affected by the judgment after the death of the judgment debtor, necessarily by implication excludes every other process and proceeding to accomplish the same purpose, within the maxim *expressio unius est exclusio alterius.* These two provisions of the Code have never been repealed in terms or modified in any way; they are still in full force, each governing in cases to which it is applicable.

The claim is, however, that section 376 of the Code and the subsequent sections prescribing the detail of the procedure in the case provided for, have been superseded by chapter 295 of the Laws of 1850. It is well settled that repeals by implication are not favored in the law, and that, unless the two statutes are entirely repugnant, both may stand. The act of 1850 can have full effect without interfering at all with the provisions of the Code alluded to. It may perchance shorten the limitation of time within which the execution may be issued against the real property of the judgment debtor after his death, and simplify the form of the execution in such cases, but whether it accomplishes either of these purposes it is not necessary now to decide. It does make the leave of the surrogate necessary in all cases to the issuing of an execution after the death of a judgment debtor; this was the prominent object of the act, and the legislature may well have thought it important with a view to the

Opinion of the Court, per ALLEN, J.

settlement of estates, the marshalling of assets and the prevention of an unnecessary resort to proceedings against heirs and terre-tenants, in respect of real property held by them and affected by the judgment, when, by a proper application of the personal effects, the judgment could be paid. But the leave of the surrogate was not repugnant to or inconsistent with the proceedings authorized by the Code in the court having jurisdiction of the judgment. There is no evidence any where in the act of an intent, on the part of the legislature, to deprive heirs and terre-tenants of the substantial right to a hearing before their property could be taken upon process to which they were not parties. With the exception of two cases, *Flannigan* v. *Tinen* (53 Barb., 587) and *Wilgus* v. *Bloodgood* (33 How., 289), the decisions are uniform; that the act of 1850 has not superseded the provisions of the Code regulating the procedure in the court in which a judgment is recovered, for enforcing the same after the death of the debtor, and the cases before referred to cannot be regarded as authority, so far as they intimate a different opinion. (*Alden* v. *Clark*, 11 How., 209 ; *Frink* v. *Morrison*, 13 Abb. Pr. R., 80 ; *The Marine Bank of Chicago, supra ;* *Wood* v. *Morehouse*, 45 N. Y., 368 ; *Docks* v. *Backenstose*, 12 Wend., 542.)

There were no proceedings in the Supreme Court, pursuant to section 376 of the Code, for the revival of the judgment against the heirs, devisees or terre-tenants of the lands of the deceased judgment debtor, nor were the parties in interest summoned to show cause why the judgment should not be enforced against the estate of the judgment debtor in their hands respectively ; nor were they made parties to the judgment or proceeding by any process authorized by statute or recognized by the practice of the court. It does not appear by the proceedings that any person appeared to contest the application for leave to issue execution, except the widow of the deceased judgment debtor, and it does not appear that she claimed to be or was either heir, devisee or tenant of any lands affected by the judgment. The court acquired no

jurisdiction against the parties to be affected by the execution, by reason of their interest in the lands and estate of the judgment debtor, by the summary proceedings and orders spread out upon the record. They were a nullity as against the parties interested or in possession of the real estate of the judgment debtor. It follows that the execution upon the judgment was void as against the real estate sought to be reached by it. The plaintiff acquired no title under the sale, and should have been nonsuited.

The order granting a new trial must be affirmed, and judgment absolute for the defendant pursuant to stipulation.

All concur.

Order affirmed, and judgment accordingly.